# Tort Claims and Automatic Stay
## Submitted by Lawrence D. Hirsch

# TORT CLAIMS AND AUTOMATIC STAY

The filing of a Bankruptcy Petition triggers the imposition of an Automatic Stay under 11 U.S.C. §362(a). The effect of the stay is to immediately "freeze" all claims against the Debtor, against property of the estate and against property of the Debtor. When a suit is pending in another Court for a personal injury or other tort claim at the time of the filing of the Bankruptcy Petition the litigant will often want to proceed to judgment and potentially to collection of a judgment. The Bankruptcy Code and Rules and applicable case law provide some guidance as to "what happens next".

<u>INSURANCE AND TORT CLAIMS</u>

The simplest matter which might arise is the pending personal injury claim arising from a car accident for which there is adequate liability insurance to cover a potential loss. Although there is no ruling from the Ninth Circuit Court of Appeals on this point, case law seems clear that the proceeds of a liability insurance policy are not property of the estate (unless the policy itself provides otherwise). <u>In re Endoscopy Center of Southern Nevada, LLC</u>, 451 B.R. 527 (Bankr. D. Nev. 2011); <u>In re Cini</u>, 2012 WL 2374224 (Bankr. D. Mont. 2012); <u>In re Pintlar Corporation</u>, 124 F.3d 1310 (9th Cir. 1997). However, the Automatic Stay is still in existence and the Plaintiff must seek stay relief prior to commencing or continuing litigation against the Debtor. <u>Cini</u>, *supra*. The tort claimant will usually file a simple motion for relief from stay which provides that the relief sought will be limited to Debtor's insurance coverage.

There are more complicated circumstances when a personal injury tort claim or wrongful death case is pending when a Bankruptcy is filed and the matter is not as simple as the illustration above. The Bankruptcy Court itself does not have jurisdiction to hear a pending personal injury claim. 28 U.S.C. § 157(b)(5) provides that the District Court in the District where the Bankruptcy is pending or in the District Court where the claim arose shall have jurisdiction to hear that matter. The Bankruptcy Court is to decide which Court will hear it. The claim will be liquidated in that Court and the tort claimant will then have a claim in the pending Bankruptcy case. This allows for the liquidation of the tort claim in a forum in which a trial by

jury is permissible and the liquidation of the claim does not involve an analysis of Bankruptcy Law.

JURISDICTION

What if the tort claim arises out of an intentional tort and the Debtor is an individual? What if there is no insurance to provide payment of the loss or if insurance is inadequate? Can the Bankruptcy Court hear the matter in the context of a Complaint to Determine Dischargeability of Debt under 11 U.S.C. § 523(a)(6)?

In 2011 the United States Supreme Court entered its ruling in Stern v. Marshall, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), in which the Court recognized that there were constitutional limitations to Bankruptcy Court jurisdiction even if the Bankruptcy Code authorized a Bankruptcy Court to exercise subject matter jurisdiction. Stern concerned the ability of a Bankruptcy Court to enter a final judgment in a counter-claim arising out of a dispute over a proof of claim filed by a Creditor. Since the entry of that decision Courts have labored in the effort to determine the scope and breadth of that decision and its impact upon Bankruptcy Court jurisdiction.

The Ninth Circuit has now ruled that a Bankruptcy Court has Constitutional jurisdiction to both adjudicate a determination of dischargeability of debt and to liquidate the claim. In re Deitz, 760 F.3d 1038 (9th Cir. 2014). The Debtor in Deitz asserted that the Bankruptcy Court could not liquidate a claim against him based upon the limitations of jurisdiction announced by the Supreme Court in Stern. The Ninth Circuit adopted the prior ruling of the Bankruptcy Appellate Panel (In re Deitz, 469 B.R. 11 (9th Cir. BAP 2012)) in holding that the ruling of Stern was to be granted limited scope and did not deprive the Bankruptcy Court of its jurisdiction to both determine the dischargeability of debt and to liquidate the claim.

RES IUDICATA AND DEFAULT JUDGMENTS

Often pending tort claims will also involve claims of non-dischargeability, as an intentional tort, a conversion or some variety of fraud. It is also possible that the claim will be heard as a default by the State Court or has already been heard as a default by the State Court. Will a default judgment be entitled to res judicata/collateral estoppel effect in the Bankruptcy

Court so that the underlying judgment is non-dischargeable without the need to "relitigate" the claim? The answer to that question depends upon a number of factors- what is the law of the jurisdiction in which the judgment was rendered as to the binding effect of a default judgment? Was there a "hearing on the merits"? Did the Debtor participate in a meaningful way in the underlying litigation? The amount of the debt is subject to preclusive effect. In re Daghighfekr, 161 B.R. 685 (9th Cir. BAP 1993); In re Cha, 483 B.R. 547 (9th Cir. BAP 2012).

The Bankruptcy Court will first look at the law of the jurisdiction that rendered the underlying decision. "When a federal court considers the collateral estoppel effect of a prior state court judgment, the full faith and credit provision of 28 U.S.C. § 1738 requires the federal court to give the state court judgment the same preclusive effect as the state rendering the judgment would give." In re Riggle, 389 B.R. 170, 173 (D. Colo. 2007) (citing Boiling v. City & County of Denver, 790 F.2d 67, 68 (10th Cir. 1986).

Does applicable state law give preclusive effect to a default judgment? For example, Arizona law is clear on this issue. Arizona law does not grant collateral estoppel effect to a default judgment. Chaney Bldg. Co. v. City of Tucson, 148 Ariz. 571, 716 P.2d 28 (1986); State ex rel. Department of Economic Security v. Powers, 184 Ariz. 235, 908 P.2d 49 (App. 1995). Since the Courts in Arizona would not apply collateral estoppel to the default judgment, the Bankruptcy Court cannot. In re Harmon, 250 F.3d 1240 (9th Cir. 2001). Arizona law is clear- in order for a judgment to be granted collateral estoppel effect, it must be "submitted for determination." In a case of a default "none of the issues is actually litigated", and there can be no collateral estoppel effect given to the judgment. Chaney, *supra* at page 30. However, a default judgment in a Federal Court may be given preclusive effect. See In re Smith, 362 B.R. 438 (Bankr. D. Ariz. 2007). A practitioner faced with this question must look to the underlying case. If it is a State Court judgment, from what state does the judgment arise? What is the law of the rendering state regarding the preclusive effect of a default judgment?

At what point does the Debtor's participation in an underlying state court case allow a Bankruptcy Court to give preclusive effect to a Default Judgment entered under state law where there is no preclusive effect to a default judgment? At what point can a litigant no longer "back out" and rely upon the law regarding default judgments and preclusion? It is a

Page | 3

slippery slope. A recent 9th Circuit Bankruptcy Appellate Panel decision thoroughly analyzed and opined on this issue. In In re Child, 486 B.R. 168, 175 (9th Cir. BAP 2013), the BAP reversed a ruling by the Bankruptcy Court that a state court default finding of fraud was preclusive.

Child was sued, along with his ex-wife (and ultimately his father), by a creditor who alleged fraudulent conduct on Child's part in the execution of various loan documents. Child was served and submitted a lengthy letter to the Superior Court judge explaining his conduct and that he disputed the factual allegations of fraud raised by the Plaintiff. He attended four (4) status conferences and acknowledged his obligation to file responsive pleadings, which he never filed. Although he was not represented by Counsel, he did acknowledge that he understood what was expected from him and he had full knowledge of the timetable for his filings. He failed to respond to a Summary Judgment Motion and a judgment was ultimately entered against him. His participation in the litigation lasted for almost a year and a half- a period of time in which he was actively involved in his own defense and was fully aware of the proceedings pending against him. His justification for his inaction was his anticipated Bankruptcy filing and his intent to retain counsel for that purpose. In Child, the Bankruptcy Court determined that the Debtor's activity in the Superior Court was adequate to bind him to the judgment, both as to amount and as to the nature of the obligation. The BAP reversed, at least as to a determination of the preclusiveness of the nature of the debt. The BAP went to great lengths to trace the history of issue preclusion/collateral estoppel under Arizona law, which was controlling law in that matter. The Court analyzed a number of prior BAP and Bankruptcy Court cases interpreting Arizona law. It found that Arizona law would not support issue preclusion on a default judgment entered as a discovery sanction. "In this specific regard, to the extent Kirkland, Bell and Daily allow sanctionable or other wrongful conduct to serve as a basis for issue preclusion, such authority is unsupported by Arizona law ..." Child, supra at page 8 of the decision. Perhaps the "point of no return" under Arizona law is best established by two Bankruptcy Court decisions- In re Kirkland, 2008 WL 8444824 and In re Bell, 2008 WL 2277875.

Kirkland and Bell each actively participated in Superior Court litigation. Kirkland (a disbarred attorney) even attempted to persuade the Plaintiffs to fire their lawyer and stipulate to a Summary Judgment in his favor. Kirkland answered the Complaint, engaged in discovery,

Page | 4

attended and testified at hearings and was personally held in Contempt by the trial court judge for his specific actions taken in the litigation and his answer was struck as a sanction, although he did attend and participate in a hearing set to determine damages. He then appealed. He was clearly actively involved in the entire litigation (although based upon the BAP's determination in Child that a default based upon a discovery sanction is not entitled to issue preclusiveness, one wonders if the decision would be upheld today). Defendants Bell filed an Answer to the lawsuit and attended a preliminary hearing in the Superior Court prior to filing Bankruptcy. After the stay was lifted, they filed a Disclosure Statement in the Superior Court and attended a hearing at which time they informed the Court that they were waiting for a briefing schedule order before responding to a Summary Judgment Motion. Both Bell and Kirkland were active participants in the State Court litigation.

Oklahoma, by contrast, will examine the underlying record to determine if the defaulted party had a full opportunity to litigate the merits and chose not to. In Oklahoma, the application of collateral estoppel requires the following four elements to have been met:

"To apply collateral estoppel, the following elements must be established: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1022 (10th Cir. 2001).

For issue preclusion to operate, the issue sought to be precluded must be identical in both actions and must have been actually litigated, Furthermore, "[n]ecessary inferences from the judgment, pleadings and evidence will be given preclusive effect." Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518.

Oklahoma recognizes the doctrine of collateral estoppel so long as a Defendant has been given a fair opportunity to litigate, regardless of whether the party chooses to litigate. In re Jordana, 232 B.R. 469 (10th Cir. BAP 1999). In Jordana, a default judgment was entered as a discovery sanction against the Defendant (later the Debtor). In granting collateral estoppel

effect to the default judgment, the 10th Circuit BAP stated "He had every opportunity to litigate the fraud claims against him. This is not a default judgment in the sense of the cases he cites…The bankruptcy court properly gave preclusive effect to the District Court judgment and then simply applied § 523(a)(2)(A) and (B) in granting summary judgment." 232 B.R. at page 476. In Jordana, the Debtor received notice of a hearing (however, he was sanctioned by the State Court for failing to comply with a series of State Court orders) but chose not to attend. The decision to "no show" at trial is a right, but it comes with a price.

Oklahoma Courts recognize that a final judgment cannot be collaterally attacked. "In Oklahoma, once a matter has passed to final judgment in a court of competent jurisdiction, it may not be reopened or subsequently considered absent fraud or collusion." In re Laing, 945 F. 2d 354, 358-359 (1991). As long as Defendants herein had a fair opportunity to litigate the issues before the State Court, that judgment must be given preclusive effect so long as the other necessary elements have been met. In re Garland, 417 B.R. 805 (10th Cir. BAP 2009).

Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991), mandates that the standard of proof in a nondischargeability case is, at minimum, a preponderance of the evidence. If the standard of proof in the State Court is the same or higher, and if the issues were actually litigated and issues necessarily decided then a bankruptcy court must apply issue preclusion.

In Oklahoma, the standard of proof for fraud, which would be applicable to Plaintiffs' 523(a)(2)(A) claim, is "clear and convincing evidence". See Derakhshan v. Tizzio, 270 P.3d 215, 217 (Okla. App. 2011); Silk v. Phillips Petroleum Co., 760 P.2d 174, 177 (1988). In Oklahoma the standard of proof for breach of fiduciary duty and for conversion is the same as the Federal standard. Thomas v. Mathis, 72 P.2d 484 (Okla. 1937); Miles v. State, 268 P.2d 290 (Okla. Crim. App. 1954). Thus the Grogan standard is met for all three of Plaintiffs' claims to be given collateral estoppel effect.

Other states (including California) grant preclusive effect to default judgments. Counsel (for both sides) must carefully examine the underlying case to see what law to apply in the Bankruptcy Court. Even if creditor's counsel obtains stay relief to litigate a matter in the State

Court that is progressing by default it is appropriate for Plaintiff's counsel to present evidence by testimony and by documents to the Superior Court so that there is an underlying record for the Bankruptcy Court to evaluate. The Debtor/Defendant should be given every opportunity to participate, even in a default hearing where the Defendant would still have the right to cross-examine witnesses. If the Debtor is given an opportunity to participate and chooses not to, and if the Bankruptcy Court can determine that an adequate record has been established to support the underlying claim, then the Bankruptcy Court may be able to give preclusive effect to the default judgment.

COMMUNITY AND SOLE AND SEPARATE LIABILITY

As a general rule, a debt incurred during a marriage is presumed to be a community liability of husband and wife (*see* A.R.S. § 25-215). That presumption can be overcome. In our hypothetical, Mr. and Mrs. Doe are in Bankruptcy and there is a tort claim pending against husband. Arizona law requires that both husband and wife be named in a lawsuit if a recovery is to be had against community property. See Spudnuts v. Lane, 139 Ariz. 35, 676 P.2d 669 (Ariz. App. Div. 2 1984). The failure to name the wife in the pending tort action would result in a judgment against the husband only which could only be satisfied from his sole and separate property (assuming the tort arose after the marriage). In a Bankruptcy proceeding, the creditor could not collect from property of the estate which is community but could only be paid from the liquidation of the husband's sole and separate property. *See* 11 U.S.C. § 726(c).

Assuming for the moment that no lawsuit was filed but the claim arises due to Mr. Doe's conduct alone, and if the debt might be non-dischargeable, is it non-dischargeable as to just Mr. Doe's sole and separate liability or is it non-dischargeable as to community property? As in many areas of law, there is a difference of opinion even within the Arizona Bankruptcy Court system. In In re LeSueur, 53 B.R. 414 (Bankr. D. Ariz. 1985), Judge Nielsen ruled that both the non-exempt sole and separate property of the "guilty" spouse and the non-exempt community property was answerable for a judgment of non-dischargeability of a community debt. In In re Clark, 179 B.R. 898 (Bankr. D. Ariz. 1995), Judge Mooreman ruled that the underlying non-dischargeable debt was only non-dischargeable as to the husband's sole and separate property. *But see* In re Maready, 122 B.R. 378 (9th Cir. BAP 1991), which reverses a decision by Judge

Page | 7

Mooreman in which he determined that the failure to name the wife in a non-dischargeability complaint precluded an award that would be chargeable against the community. The BAP remanded to the Bankruptcy Court to determine if the debt was a community obligation. Judge Nielsen's decision in LeSueur was followed by Judge Haines in determining that if the underlying debt was a community debt then a finding of non-dischargeability would be equally binding upon the community (of course, the sole and separate property of the "non-acting" spouse would not be available to satisfy the claim). In re Rollinson, 322 B.R. 879 (Bankr. D. Ariz. 2005). *See also* In re Oliphant, 221 B.R. 506 (Bankr. D. Ariz. 1998), as to the liability of the non-acting spouse, relying upon the Arizona case of Community Guardian Bank v. Hamlin, 182 Ariz. 627, 898 P.2d 1005 (1995). To the extent that the community benefits from one spouse's wrongful conduct, the community will be liable for the debt and it is likely that the determination of non-dischargeability will bind the community. In re Kirkland, 2008 WL 8444824 (9th Cir. BAP 2008); In re Bush, 2005 WL 6960185 (9th Cir. BAP 2005).